United States District Court
District of Massachusetts

| | |
|---|---|
| United States of America,         )<br>                                   )<br>        v.                         )<br>                                   )<br>Leudy Enrique Rodriguez Mojica,    )<br>                                   )<br>        Defendant.                 )<br>                                   ) | Criminal Action No.<br>16-10148-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Leudy Enrique Rodriguez Mojica ("defendant") has been indicted on 1) one count of alien unlawfully present in the United States in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(5)(A), and 2) one count of false representation of a Social Security account number, in violation of 42 U.S.C. § 408(a)(7)(B). The indictment also includes a criminal forfeiture allegation.

Currently before the Court is defendant's motion to suppress evidence obtained during a <u>Terry</u> stop of the vehicle he was driving on March 23, 2016. For the reasons that follow, the motion will be denied.

**I.  Background**

In January, 2016, Special Agent Dana Fiandeca, of the United States Immigration and Customs Enforcement ("ICE") Homeland Security Investigations ("HSI"), received information

-1-

from a confidential source ("CS") about a Dominican male named "Leudy" who was unlawfully present in the United States and was involved in the drug trade in Lawrence, Massachusetts. According to the CS, "Leudy" assumed an alias using Puerto Rican documents and drove a gold-colored Toyota Avalon without a driver's license. The CS also provided Leudy's cell phone number. Two months later, in March, 2016, the CS provided Special Agent Fiandeca a license plate number for the Avalon and informed him that "Leudy" possessed a handgun.

On March 23, 2016, Special Agent Fiandeca was in an unmarked vehicle with two FBI special agents and an ICE deportation officer (collectively, "the agents") in Lawrence, Massachusetts. The agents spotted the gold Avalon near Broadway and Bradford streets. Although they could not follow the vehicle, they later located it in a parking lot near a basketball court in the Essex Street projects. At that point, the federal agents contacted Detective John Heggarty of the Lawrence Police Department and after he arrived, the agents collectively decided to approach the vehicle.

They asked the five occupants in the vehicle to show their hands. The three passengers in the back seat, including a known gang member, complied with the agents' orders. The front seat passenger was hesitant but ultimately complied. The driver, later determined to be the defendant, did not comply with the

agents' order to show his hands.  As a result, one of the agents attempted to open the driver-side door.  Just before he did so, another agent noticed a firearm on defendant's lap and yelled "gun".  Subsequently, all occupants of the vehicle were removed and handcuffed.  The agents then did a sweep of the Avalon and they discovered a Puerto Rican birth certificate and a Social Security number for "Ocasio Ramos," defendant's alias.  Defendant was ultimately arrested and charged with several weapons and motor-vehicle offenses.

In May, 2016, a grand jury indicted defendant in this case. In January, 2017, defendant moved to suppress the evidence from the Terry stop and the ensuing search that occurred on March 23, 2016.

## II. Motion to Suppress

Defendant seeks to suppress all fruits of the search. According to defendant, the evidence should be suppressed because the CS relied upon by investigators was not sufficiently reliable and, therefore, the police lacked reasonable suspicion to conduct a Terry stop.  The government responds that the informant had provided reliable information in the past and thus gave the police enough information to meet the reasonable suspicion standard.

### A. Legal Standard

Even without probable cause to make an arrest, police officers may conduct a brief investigatory stop for the purposes of crime prevention and detection. Terry v. Ohio, 392 U.S. 1, 22 (1968). Such encounters are justified if the officer has "reasonable, articulable suspicion that criminal activity is afoot." United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004). In making a reasonable-suspicion determination, a court

> must look at the totality of the circumstances . . . to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing . . . . [O]fficers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them.

United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotation marks and citations omitted). Although an officer must rely on more than a hunch, the likelihood of criminal activity "need not rise to the level required for probable cause." Id.

Reliable information from a confidential source can give authorities the requisite reasonable suspicion to conduct a Terry stop. United States v. Monteiro, 447 F.3d 39, 44 (1st Cir. 2006).

### B. Application

When all of the circumstances are considered, there is sufficient evidence to establish that the tips from the CS gave

the agents reasonable suspicion to believe that defendant was committing a crime when they stopped his vehicle.

First, Special Agent Fiandaca had known the CS for at least two months before the agents conducted a Terry stop. Consequently, Fiandaca was in a position to assess the CS's credibility and hold him accountable if the information proved to be incorrect. See United States v. Brown 500 F.3d 48, 53-54 (1st Cir. 2007) (giving weight to the fact that the CS was known to the police and thus could be held accountable for bad information).

Moreover, the CS had provided correct information to the agents in the past. Although the government did not divulge the specifics of those earlier tips, the fact that they were proven correct enhances the CS's reliability. United States v. Dixon, 861 F. Supp. 2d 2, 7 (D. Mass. 2012) (noting that past successful tips bolster a CS's reliability even if there is a "lack of particularized information" about those tips).

Defendant asserts that the agents failed to corroborate the information that the CS provided them. The government responds, correctly, that the tip explaining that "Leudy" was dealing drugs from the gold Avalon was validated by the fact that the Avalon was found in a high-crime area known for drug trafficking. Although such information might not always be indicative of illegal activity, corroboration of seemingly

innocent activity can establish the reliability of the informant. United States v. Tiem Trinh, 665 F.3d 1, 12 (1st Cir. 2011) (quoting United States v. Greenburg, 410 F.3d 63, 69 (1st Cir. 2005)). Thus, in light of the CS's tip that "Leudy" was dealing drugs, the fact that the Avalon was parked in a high crime area tends to corroborate that information.

Defendant also maintains that the agents lacked reasonable suspicion because the CS did not give a physical description of "Leudy" and thus they could not have known he was driving the Avalon at the time of the stop. Between January, 2016, and March, 2016, however, the CS informed Special Agent Fiandeca on at least two occasions that a man named "Leudy" was driving a gold Toyota Avalon and provided specific details about the vehicle and the alleged illegal activities. It was thus reasonable for the agents to suspect that the man named "Leudy" was driving the vehicle on a regular basis, including at the time of the Terry stop. See Brown, 500 F.3d at 55-56 (concluding that the informant was sufficiently reliable even though he did not provide a "precise physical" description of the alleged drug trafficker).

Accordingly, in light of the all the circumstances, the Court concludes that the CS was sufficiently reliable, giving the agents reasonable suspicion to believe that illegal activity

was taking place when they approached the Avalon.  The Terry stop was thus lawful.

**C    Evidentiary Hearing**

An evidentiary hearing is required only if the moving party

> makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.

United States v. Jimenez, 419 F.3d 34, 42 (1st Cir. 2005). Criminal defendants are not entitled to evidentiary hearings as a matter of course. See United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990) ("[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion.").

Defendant merely requests a hearing "in the alternative," should the Court not make a decision on the merits.  The Court concludes that defendant has not made the requisite threshold showing and his motion to suppress evidence will be denied without a hearing.

**ORDER**

In accordance with the foregoing, defendant's motion to suppress (Docket No. 43) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 24, 2017